UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x

SABRINA ROLDAN,

Plaintiff,


-against-


ADOLFO LEWIS; CECILIA ELLIS; NATALIE BARNWELL,
individually and as director; HEARTSHARE HUMAN
SERVICES OF NEW YORK; HEARTSHARE ST. VINCENT'S
SERVICES; MARK CASNER; GLORIA ANTONSANTI;
MARIBEL CRUZ; VALERIE RUSSO, individually and as          **Civ. No. 20-3580 (DG, RER)**
Deputy Commissioner; CITY OF NEW YORK;
CONCORD FAMILY SERVICES; LELAR FLOYD, individually
and as executive director; LUZ LIBURD, individually and
as deputy director; JACQUELINE MOSELEY, individually
and as program director; THEODORA DIGGS, individually and
as program director; CLAIRE HAYNES, and CHARMAINE
FRANK,

Defendants.            **THIRD-PARTY**
-------------------------------------------------------------------------------x     **COMPLAINT**

CITY OF NEW YORK,

Third-Party Plaintiff,


-against-


LEXINGTON INSURANCE CO. and PHILADELPHIA
INDEMNITY INSURANCE CO.,

Third-Party Defendants.

-------------------------------------------------------------------------------x

Plaintiff, the City of New York (the "City"), by its attorney, James E. Johnson, Corporation Counsel of the City of New York, alleges upon personal knowledge as to itself and upon information and belief as to all other matters:

**INTRODUCTION**

1.     This is an action for a declaratory judgment action that i) Third-Party Defendants Lexington Insurance Company ("Lexington") and Philadelphia Indemnity Insurance Company ("Philadelphia") each have a separate duty under their respective policies of insurance to defend the City in an action captioned *Sabrina Roldan, Plaintiff, - against - Adolfo Lewis; Cecilia Ellis; Natalie Barnwell, individually and as Director; Heartshare Human Services of New York; Heartshare St. Vincent's Services; Mark Casner; Gloria Antonsanti; Maribel Cruz; Valerie Russo, individually and as Deputy Commissioner; City of New York;  Concord Family Services; Lelar Floyd, individually and as Executive Director; Luz Liburd, individually and as Deputy Director; Jacqueline Moseley, individually and as Program Director; Theodora Diggs, individually and as Program Director; Claire Haynes, and Charmaine Frank,* Civ. No. 20-3580 (DG, RER) (E.D.N.Y. 2020)  (the "*Roldan* Action") and ii) must pay the City's attorney's fees and costs incurred to date in defending the *Roldan* Action.

2.     In the alternative, if the Court finds that Philadelphia does not have a duty to defend the City in the *Roldan* Action, the City seeks a declaratory judgment that St. Vincent's Heartshare is liable to the City for breach of a contract to procure insurance that provides a defense to the City in the *Roldan* Action.

**PARTIES**

3.     Third-Party Plaintiff the City of New York is a municipal corporation organized pursuant to the laws of the State of New York.

4.     Third-Party Defendant Lexington is an insurance company domiciled in the State of Massachusetts with its principal place of business at 99 High St, Boston, MA 02110-2378. Lexington is licensed to transact and engage in the business of insurance in the State of New York.

5.     Third-Party Defendant Philadelphia is an insurance company domiciled in the State of Pennsylvania with its principal place of business at One Bala Plaza, Suite 100, Bala Cynwyd,

Pennsylvania 19004.  Philadelphia is licensed to transact and engage in the business of insurance in the State of New York.

6.      Concord is a non-profit domestic corporation domiciled in New York with its principal place of business at 1221 Bedford Ave, Brooklyn, NY, 11216.

7.      St. Vincent's Heartshare is a non-profit domestic corporation domiciled in New York with its principal place of business at 66 Boerum Place, Brooklyn, NY 11201.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the Third-Party Defendants pursuant to 28 U.S.C. § 1332 (a).

9.      Venue in the Southern District is proper pursuant to 28 U.S.C. § 1391(a)(2).

## FACTS

### The City's Contracts with Concord.

10.      On or about May 26, 2000, Concord Family Services, Inc. ("Concord"), then located at 1221 Bedford Avenue, Brooklyn, New York 11216, a foster care services agency, entered into contract number CT-068-200100030 with the City, acting through the New York City Administration for Children's Services ("ACS"), to provide child welfare and foster care services for a term running from March 1, 2000 through February 28, 2003, with the option for ACS to renew for two additional three-year terms running from March 1, 2003 through February 28, 2006 and from March 11, 2006 through February 28, 2009.

11.      The March 1, 2000 Contract was renewed under both renewal options and hence was in place from March 1, 2003 to February 2009.

12.      The March 1, 2000 Contract, together with all subsequent renewals, is referred to as the "Concord Contract".

13. At all times relevant herein, pursuant to the Concord Contract, Concord provided, among other things, foster care and foster placement services for children.

14. Pursuant to the Concord Contract, Concord was required to obtain commercial general liability insurance in the minimum amount of $1,000,000 per occurrence in which the City was named as an additional insured for claims arising out of Concord's operations under the Concord Contract.

**Concord Purchases the Lexington Policies Naming the City as an Additional Insured**

15. Pursuant to its contractual obligation, Concord purchased from Lexington various commercial general liability and professional liability policies that were effective for some or all of the time period of the *Roldan* Action (collectively referred to as the "Lexington Policies"), including but not limited to Lexington Policy Number 2346672 in force from 7/01/2005-7/01/2006 and Lexington Policy No. 009271264 whose effective date is to be determined.

16. Concord is a named insured under the Lexington Policies.

17. The City is an additional insured under the Lexington Policies.

**The City's Contracts with St. Vincent's Heartshare.**

18. On or about May 25, 2000, St. Vincent's Heartshare, ("St. Vincent's Heartshare"), a foster care services agency, entered into contract number 20000031048 with the City, acting through the New York City Administration for Children's Services ("ACS"), for the provision of child welfare and foster care services for the period March 1, 2000 through February 28, 2003, which contract was twice renewed through February 28, 2009, and extended from March 1, 2009 through September 30, 2010. St. Vincent's Heartshare and the City entered into a second contract for the provision of family foster care services for the period of July 1, 2011 through June 30, 2016, which was renewed through June 30, 2020.

19.     The May 25, 2000 contract and its renewals, and the July 11, 2011 contract and its renewals are collectively referred to as the "St. Vincent's Heartshare Contract."

20.     At all times relevant herein, pursuant to the St. Vincent's Heartshare Contract, St. Vincent's Heartshare provided, among other things, foster care and foster placement services for children.

21.     Pursuant to the St. Vincent's Heartshare Contract, St. Vincent's Heartshare was required to obtain commercial general liability insurance in the minimum amount of $1,000,000 per occurrence in which the City was named as an additional insured for claims arising out of St. Vincent's Heartshare's operations under the St. Vincent's Heartshare Contract.

### St. Vincent's Heartshare Purchases the Philadelphia Policies Naming the City as an Additional Insured

22.     Pursuant to its contractual obligations, St. Vincent's Heartshare purchased from Philadelphia a series of commercial general liability and professional liability policies that were effective for some or all of the period of the *Roldan* Action (collectively referred to as the "Philadelphia Policies"), including but not limited to Philadelphia Primary Policy No. PHPK765993 issued to St. Vincent's Heartshare for the policy period of August 31, 2011 to August 31, 2012.

23.     St. Vincent's Heartshare is a named insured under the Insurance Policies.

24.     The City is an additional insured under the Insurance Policies.

### The Roldan Action

25.     On or about August 13, 2020, plaintiff Sabrina Roldan ("Roldan") served the City with a summons and complaint (the "Roldan Complaint").

**Allegations Against Concord in the Roldan Complaint**

26.     The Roldan Complaint asserts claims against Concord, various Concord employees, and the City and various ACS employees for federal and state constitutional claims arising out of events occurring in the foster homes in which Sabrina Roldan had been placed.

27.     The Roldan Complaint alleges that sometime in or around 1997, Roldan was placed in the care of Concord and the City after having been abandoned by her mother.

28.     The Roldan Complaint further alleges that between 1997 and 2002, Roldan was physically and sexually abused by the foster parents with whom she had been placed by Concord, and that Concord failed to protect Roldan after learning of the abuse.

29.     The Roldan Complaint also alleges that Roldan became ill as a result of inadequate hygiene in one of the foster homes in which she had been placed.

30.     The Roldan Complaint also alleges that Roldan suffered unspecified injuries as a result of Concord's placement of plaintiff in ten different foster homes between 1997 and 2008.

31.     On September 14, 2020, the New York City Law Department (the "Law Department") notified Lexington of the City's receipt of the Roldan Complaint and demanded a defense under the Lexington Policies, and the action was thereby tendered to Lexington.

32.     By letter dated November 8, 2020, AIG Claims, Inc., on behalf of Lexington, acknowledged receipt of the City's September 14, 2020 tender and denied coverage on the basis of a number of incorrect characterizations of the *Roldan* Complaint and various errors of law, including, but by no means limited to the fact that Lexington's disclaimer was untimely as a matter of law.

33.     As of the date of this complaint, Lexington has failed to provide the City with a defense in the *Roldan* Action.

**Lexington's Duty To Defend The City Under The Lexington Policies**

34.     Under the Concord  Contract, Concord supervised the foster care placement of the plaintiff Sabrina Roldan

35.     The Roldan Complaint names as defendants, *inter alia*, (1) Concord and several of its employees; (2) the City and several City employees.

36.     Under the terms of the Lexington Policies, Lexington is required to provide the City with a defense in the *Roldan* Action because the Roldan Complaint alleges that Roldan suffered injuries arising out of Concord's operations, namely Roldan's foster care placements.

37.     As a result of Lexington's wrongful failure to provide the City with a defense, the City has been forced to incur costs and expenses in defending itself through the Law Department.

**Allegations Against St. Vincent's Heartshare in the Roldan Complaint**

38.     As to St. Vincent's Heartshare, the Roldan Complaint alleges that Roldan was forced to live in a dangerous, malodorous, vermin-infested and overcrowded foster home, where in addition to those living conditions, she was subject to sexual abuse.

39.     The Roldan Complaint further alleges Roldan sustained damage to her property as a result of St. Vincent's Heartshare's neglect when moving Roldan between foster homes.

40.     Finally, the Roldan Complaint alleges that plaintiff's education suffered and that she was forced to drop out of school because St. Vincent's Heartshare placed in Roldan in ten different foster homes.

41.     On November 5, 2020, the New York City Law Department (the "Law Department") notified Philadelphia of the City's receipt of the Roldan Complaint and demanded a defense under the Philadelphia Policies.  Philadelphia failed and continues to fail to respond to the City's demand.

**Philadelphia's Duty To Defend the City Under The Philadelphia Lexington Policies**

42. Under the St. Vincent Heartshare's Contract, St. Vincent's Heartshare supervised the foster care placement of Sabrina Roldan.

43. The Roldan Complaint names as defendants, *inter alia*, (1) St. Vincent's Heartshare and several of its employees; and (2) the City and several City employees.

44. Under the terms of the Philadelphia Policies, Philadelphia is required to provide the City with a defense in the *Roldan* Action because the Roldan Complaint alleges that Roldan suffered injuries arising out of St. Vincent Heartshare's operations, namely Roldan's foster care placements.

45. On or about September 28, 2020, Philadelphia disclaimed coverage for the City, spuriously asserting, *inter alia*, that the allegations of the Roldan Complaint fell solely and exclusively with the terms of an abuse and molestation exclusion.

46. As a result of Philadelphia's wrongful failure to provide the City with a defense, the City has been forced to incur costs and expenses in defending itself through the Law Department.

**St. Vincent's Heartshare's Liability**

47. Under the St. Vincent's Heartshare Contract, St. Vincent's Heartshare had an obligation to procure insurance coverage to defend and indemnify the City, as an additional insured, in any actions arising out of St. Vincent's Heartshare's foster placement and child welfare services.

48. The *Roldan* Action arises out of St. Vincent's Heartshare's foster placement and child welfare services and yet, according to Philadelphia, the Philadelphia Policies purchased by St. Vincent's Heartshare's do not provide additional insured coverage for the City.

49. In the event this Court rules that the Philadelphia Policies do not provide the City with a defense in the *Roldan* Action, then St. Vincent's Heartshare will have breached its obligation to

provide the City with the insurance coverage required under the St. Vincent's Heartshare Contract and the City will have suffered damages as a result.

### FIRST CAUSE OF ACTION — AGAINST LEXINGTON
#### (Declaration of Duty to Defend)

50.     The City repeats and realleges paragraphs 1 through 48 as if fully set forth herein.

51.     Despite the City's demand for a defense in the *Roldan* Action, Lexington has failed to provide a defense, in breach of its obligations under the Lexington Policies.

52.     Lexington's failure to defend the City in the *Roldan* Action violates the Policies and the law.

53.     There is therefore an actual controversy of a justiciable nature between the City and Lexington as to whether Lexington has a legal obligation under the terms of the Lexington Policies to defend the City in the *Roldan* Action.  A judicial declaration that Lexington is obligated to defend the City is necessary and appropriate at this time because it will settle the rights and obligations of the parties.

### SECOND CAUSE OF ACTION — AGAINST LEXINGTON
#### (Recovery of Costs of Defense)

54.     The City repeats and realleges paragraphs 1 through 48 as if fully set forth herein.

55.     Lexington was obligated to defend the City in the *Roldan* Action as of the City's September 14, 2020 tender to Lexington of the *Roldan* Action.

56.     Despite the City's demand that Lexington provide the City with a defense in the *Roldan* Action, Lexington has failed and refused to provide that defense, in breach of its obligations under the Lexington Policies.

57.	When an insurance carrier wrongfully refuses to acknowledge its defense obligation, the City's Law Department charges the carrier $300 an hour for attorney time and $90 an hour for paralegal time, plus costs and expenses.

58.	Lexington is accordingly liable for the City's defense costs in the *Roldan* Action at the rate of $300 an hour for attorney time and $90 an hour for paralegal time, plus costs and expenses, beginning no later than September 14, 2020, through the time, if any, that Lexington agrees to provide such defense.

### THIRD CAUSE OF ACTION — AGAINST PHILADELPHIA
#### (Declaration of Duty to Defend)

59.	The City repeats and realleges paragraphs 1 through 48 as if fully set forth herein.

60.	Despite the City's demand for a defense in the *Roldan* Action, Philadelphia has failed to provide that defense, in breach of its obligations under the Philadelphia Policies.

61.	Philadelphia's failure to defend the City in the *Roldan* Action violates the Philadelphia Policies and the law.

62.	There is therefore an actual controversy of a justiciable nature between the City and Philadelphia as to whether Philadelphia has a legal obligation to defend the City in the *Roldan* Action under the terms of the Philadelphia Policies.  A judicial declaration that Philadelphia is obligated to defend the City is necessary and appropriate at this time because it will settle the rights and obligations of the parties.

### FOURTH CAUSE OF ACTION — AGAINST PHILADELPHIA
#### (Recovery of Costs of Defense)

63.	The City repeats and realleges paragraphs 1 through 48 as if fully set forth herein.

64.     Philadelphia was obligated to defend the City in the *Roldan* Action as of the City's November 5, 2020 tender of the *Roldan* Action.

65.     Despite the City's demand that Philadelphia provide the City with a defense in the *Roldan* Action, Philadelphia has failed and refused to do so in breach of its obligation under the Philadelphia Policies.

66.     When an insurance carrier wrongfully refuses to acknowledge its defense obligation, the City's Law Department charges the carrier $300 an hour for attorney time and $90 an hour for paralegal time plus costs and expenses.

67.     Philadelphia is accordingly liable for the City's defense costs in the *Roldan* Action at the rate of $300 an hour for attorney time and $90 an hour for paralegal time, plus costs and expenses, beginning no later than November 5, 2020, through the time, if any, that Philadelphia agrees to provide that defense.

## FIFTH CAUSE OF ACTION
### (ST. VINCENT'S HEARTSHARE: BREACH OF THE CONTRACT)

68.     The City repeats and realleges paragraphs 1 through 48 as if fully set forth herein.

69.     If this Court rules that Philadelphia has no obligation to provide the City with a defense and indemnification under the Policies, then St. Vincent's Heartshare will have breached its contractual obligations to the City by failing to procure insurance coverage that provides the City as an additional insured with a defense in any action arising out of St. Vincent's Heartshare's foster care placement and child welfare services, such as the Roldan Action.

70.     As a result of St. Vincent's Heartshare's breach of the St. Vincent's Heartshare Contract, the City has been forced to defend itself in the *Roldan* Action and hence been damaged in an amount to be determined at trial.

**WHEREFORE**, the City demands judgment:

(a) On the First Cause of Action, declaring that Lexington is obligated under the Lexington Policies to defend the City in the *Roldan* Action;

(b) On the Second Cause of Action, declaring that Lexington is obligated to pay the City's attorneys' fees and expenses incurred by the City in defending the *Roldan* Action, at the rate of $300 per hour for attorney time and $90 per hour for paralegal time plus costs and expenses, from the date of the City's tender through the time that Lexington provides a defense of the *Roldan* Action, in an amount to be proven at trial;

(c) On the Third Cause of Action, declaring that Philadelphia is obligated under the Lexington Policies to defend the City in the *Roldan* Action;

(d) On the Fourth Cause of Action, declaring that Lexington is obligated to pay the City's attorneys' fees and expenses incurred by the City in defending the *Roldan* Action, at the rate of $300 per hour for attorney time and $90 per hour for paralegal time plus costs and expenses, from the date of the City's tender through the time that Philadelphia provides a defense of the *Roldan* Action, in an amount to be proven at trial;

(e) On the Fifth Cause of Action, against St. Vincent's Heartshare for breach of contract for failing to procure insurance to defend and indemnify the City as an additional insured under the St. Vincent's Heartshare Contracts;

(f) For such other relief as this Court may deem just and proper.

Dated:  New York, New York
    January 15, 2021

         JAMES E. JOHNSON
         Corporation Counsel of the
          City of New York
         *Attorney for Third-Party Plaintiff City of New York*
         100 Church Street, Rm. 20-99
         New York, New York 10007
         (917) 913-8523

        By: _____
         Eric Proshansky
         Assistant Corporation Counsel